[No. B110092. Second Dist., Div. Two. Dec. 8, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
BYRON GOODWIN, Defendant and Appellant.

COUNSEL

Thomas F. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BOREN, P. J.**—Appellant Byron Goodwin was convicted by a jury of commercial burglary (Pen. Code, § 459) and petty theft with a prior (Pen. Code, § 666), with findings that he had suffered two prior convictions for serious or violent felonies (two burglaries) within the meaning of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and had served four prior prison terms (Pen. Code, § 667.5, subd. (b)). He was sentenced to a prison term of 25 years to life.

### FACTS

On August 4, 1996, a Sears store security agent observed appellant take a pair of pants from a rack inside the store and conceal them under his clothing. Appellant left the store without paying for the pants. He then put the pants inside a bag, reentered the store, and attempted to get a refund for them. The store security agent arrested appellant, who thereafter admitted taking the pants.

In his defense at trial, appellant denied stealing the pants and claimed he found them outside the store. According to appellant, he entered the store to

get a refund for the pants so he could use the money to buy a car seat for his child.

## DISCUSSION

I. *The jury was not anonymous, and the jury selection process was consistent with statutory provisions and appellant's constitutional right to a public jury trial.*

■ Appellant contends he was denied the right to a public jury trial because he was tried by jurors whose names were kept secret and who were referred to only by assigned juror identification numbers. We find that, although the jurors' names were not stated aloud in court and thus not transcribed into the record, the court and counsel had available to them a list with the prospective jurors' names and corresponding identification numbers, and that the procedure employed did not violate any legislative proscription, nor deny appellant his constitutional right to a public trial.

### Applicable Statutory Provisions and Judicial Administrative Promulgations

The use in court of juror identification numbers, rather than names, arose as a result of Code of Civil Procedure section 237, as implemented by an appellate court order[1] and a Los Angeles Superior Court administrative memorandum.[2] Code of Civil Procedure section 237 (as amended by Stats. 1996, ch. 636, § 2) addresses access to juror personal, identifying

---

[1]Miscellaneous Order No. 96-1 of the Second District Court of Appeal, signed September 23, 1996, by then Administrative Presiding Justice Mildred L. Lillie provides as follows: "Code of Civil Procedure section 237, subdivision (a)(2), was amended effective January 1, 1996, to provide in criminal cases for the sealing of personal juror identifying information, including names, addresses, and telephone numbers, upon the recording of a jury's verdict. Disclosure of juror information ordered sealed pursuant to this section is a misdemeanor. Therefore, it is ordered that all clerk's and reporter's transcripts and any other documents prepared for transmission to this court in accordance with the California Rules of Court which contain portions that have been sealed pursuant to Code of Civil Procedure section 237, subdivision (a)(2), be transmitted as follows: [¶] Except in cases where the trial judge has ordered confidential juror information unsealed pursuant to Code of Civil Procedure section 237, subdivision (b), the clerk and reporter are ordered to redact from said documents the personal juror identifying information, including names, addresses and telephone numbers. In these cases, the clerk's and reporter's declarations certifying the record shall contain a statement that portions of the transcript are governed by the provisions of Code of Civil Procedure section 237(a)(2), and that all of the personal juror identifying information has been redacted. Initials or numbers may be used by the reporter in lieu of the juror names."

[2]In response to the Court of Appeal's Miscellaneous Order No. 96-1, addressing the sealing of personal juror identifying information, then Presiding Judge of the Superior Court Gary Klausner and Superior Court Judge Aurelio Munoz, then Chair of the Grand and Trial Jurors Committee, issued a memorandum to all superior and municipal court judicial officers

information and the sealing of records regarding such identifying information. The purpose of the legislation was to give "the court a measure of control over juror information, [creating] a mechanism for sealing the information and for prohibiting future access[, and making] it a separate misdemeanor to improperly obtain or release sealed juror information." (*People* v. *Granish* (1996) 41 Cal.App.4th 1117, 1124 [49 Cal.Rptr.2d 45] [discussing the original version of the legislation enacted in 1992, which is similar in purpose to the procedurally modified current version].)

Section 237, subdivision (a)(1), of the Code of Civil Procedure provides: "The names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines that a compelling interest . . . requires that this information should be kept confidential or its use limited in whole or in part." Subdivision (a)(2) of Code of Civil Procedure section 237 reveals legislative "concern for the protection of jurors in criminal trials from postverdict harassment." (*Erickson* v *Superior Court* (1997) 55 Cal.App.4th 755, 758, fn. 2 [64 Cal.Rptr.2d 230].) Subdivision (a)(2) provides, in pertinent part, as follows: "Upon the recording of a jury's verdict in a criminal jury proceeding, the court's record of personal juror identifying information of trial

(hereinafter, the Klausner-Munoz Memorandum). The memorandum provides, in pertinent part, as follows: "Our Grand and Trial Jurors Committee reviewed this matter and its impact on criminal trials, juror services and the preparation of clerks' and reporters' transcripts for criminal cases on appeal. While neither the code nor the order require trial judges to change trial procedures, the staggering volume of minute orders and reporter transcripts (nearly 1,000,000 pages annually) that the clerks and reporters must now review and redact, requires us to implement the following interim measure: [¶] Effective immediately, Judges, Clerks and Counsel should refer to *all criminal trial jurors* by the last four (4) digits of their JID (Jury Identification) number, while the Court is on the record. [¶] Implementation of this interim policy will assure juror confidentiality, compliance with Code of Civil Procedure section 237, and Justice Lillie's order. This process will also relieve your clerk and reporter of spending numerous hours having to redact personal juror identifying information from the clerks' and reporters' transcripts before sending them up an [*sic*] appeal. [¶] In order to address this problem on a long term basis, we are establishing a committee comprised of representatives of the Superior and Municipal Courts, the District Attorney, the Public Defender, the Alternate Public Defender and the defense bar. [¶] Jurors will be informed, as part of Jury Orientation, and reminded when a panel has been assigned out to a courtroom that in order to comply with the law, they will not be addressed by their names when assigned to a criminal trial court. They will be told to check their Juror Badges, to identify their JID number and learn the last four (4) digits of the JID number. They will be called to the jury box using the last four (4) digits of that number. [¶] In order to comply with the law, it is suggested that when the jury panel is brought into the courtroom, you or your clerk should also announce to the panel that the prospective jurors should look at their Juror Badges and find the last four (4) digits of their JID (Jury Identification) number. They will be called into the jury box by this number. The 'CASE INFO SHEET—ALPHABETIC' that accompanies jury panels to the courtroom has, in addition to the prospective jurors' names, the prospective jurors' JID numbers. [¶] The Grand and Trial Jurors Committee also suggested that prospective jurors should be told that this process is being implemented to assist the Court in complying with the Appellate Court's order to implement Code of Civil Procedure section 237(b)."

jurors, . . . consisting of names, addresses, and telephone numbers, shall be sealed until further order of the court as provided by this section." The term "sealed" means "extracting or otherwise removing the personal juror identifying information from the court record." (Code Civ. Proc., § 237, subd. (a)(3).)

Subdivision (f) of Code of Civil Procedure section 206 (as amended by Stats. 1996, ch. 636, § 1) provides: "Pursuant to Section 237, a defendant or defendant's counsel may, following the recording of a jury's verdict in a criminal proceeding, petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose. This information consists of jurors' names, addresses, and telephone numbers. The court shall consider all requests for personal juror identifying information pursuant to Section 237." Subdivisions (b), (c) and (d) of Code of Civil Procedure section 237 address the procedure for obtaining the personal juror identifying information sealed after return of the jury verdict.

### The Procedure Employed in the Present Case

The trial court referred to and followed the procedure strongly encouraged in the Klausner-Munoz Memorandum. As indicated by the trial court, for the convenience of the court reporter, who would have to redact juror names from the transcript after the jury's verdict to implement the applicable statutory provision (Code Civ. Proc., § 237, subd. (a)(2)), the jurors were referred to, not by name, but by the last four digits of their juror identification number on their juror badges.

Consistent with the countywide procedure noted in the Klausner-Munoz Memorandum, the court and counsel in the present case had available a copy of a case information sheet which accompanied the jury panel into the courtroom and which had the prospective jurors' names and corresponding juror identification numbers. Indeed, after establishing that juror numbers and not names would be used, the court confirmed with counsel that "You do have a copy [of the case information sheet] so you know who we're calling." It is thus apparent that the jurors' names were only withheld from the transcribed record, not from the court and counsel.

### Validity of the Local Practice Set Forth in the Klausner-Munoz Memorandum

Appellant contends that the local court practice of referring to jurors by the last four digits of their juror identification number, as described in the

Klausner-Munoz Memorandum, is invalid because it amounts to an unauthorized and premature sealing of juror identification. Relying upon *Erickson* v. *Superior Court, supra,* 55 Cal.App.4th 755, appellant urges that since Code of Civil Procedure section 237 does not authorize sealing of personal juror identifying information at any stage prior to return of the jury verdict, the local practice in Los Angeles County is inconsistent with the statute and thus invalid and unenforceable. Appellant's reliance upon *Erickson* is misplaced.

In *Erickson* v. *Superior Court* the Court of Appeal issued a writ of prohibition restraining the Placer County Superior Court from implementing its local policy, which purported to extend the sealing of juror identifying information throughout all civil and criminal proceedings. The court found the policy conflicted with Code of Civil Procedure section 237, subdivision (a), in two regards: (1) the policy limited access to juror identifying information not only in criminal cases, but in civil cases as well; and (2) the policy resulted in sealing prior to the return of a jury verdict. As those two aspects of the local superior court policy were "inconsistent with [the] statute" (*Erickson* v. *Superior Court, supra,* 55 Cal.App.4th at p. 758), the policy was deemed "invalid and unenforceable." (*Id.* at p. 759.)

In contrast to the situation in *Erickson,* the local jury selection practice here entailed the use of a list of juror names and corresponding identification numbers not in both civil and criminal cases, but only in criminal cases. However, the most significant distinction between the present case and *Erickson* is that in *Erickson* the jury selection process was in a context in which the "court unequivocally bars parties, counsel and others from access to juror identifying information, absent granting of a petition for access to that information." (55 Cal.App.4th at p. 757, fn. 1.) *Erickson* thus noted that it was "mystified" by the suggestion that the court policy " 'does not mandate juror anonymity . . . but merely controls some of the procedures and paper trail with respect to the court's jury selection system.' " (*Ibid.*)

In the present case, on the other hand, the court and counsel were not barred from access to juror identifying information. As previously emphasized, the procedure established for every trial in Los Angeles County, as indicated in the Klausner-Munoz Memorandum, provides for the court and counsel to have a copy of a case information sheet which accompanies the jury panel into the courtroom and which has the prospective jurors' names and corresponding juror identification numbers. The trial court here confirmed with counsel that the pertinent document was available "so you know who we're calling." The names of the jurors were not recorded in the reporter's transcript, but the names were nonetheless available to the court and counsel. Since the jurors' names were known to the court and counsel, the jurors were not anonymous.

The procedure described in the Klausner-Munoz Memorandum and used here was a preemptive step. No juror names were ever in the reporter's or clerk's transcript, thus obviating any subsequent need to extract or remove any juror names from those documents. Also, there was no indication of premature extraction or removal from the record of juror identifying information which was available to the court and counsel in the case information sheet. The unauthorized "sealing," meaning "extracting or otherwise removing the personal juror identifying information from the court record" (Code Civ. Proc., § 237, subd. (a)(3)), prior to the return of the jury verdict, which *Erickson* found objectionable, thus did not occur here.

Although we find the procedure at issue here not fatally inconsistent with any statute and thus not invalid, the wisdom and practicality of using this procedure may be questioned. Defense counsel, the prosecutor and the trial court all decried the impersonality and dehumanization of a process which refers to people only by number and not by name.[3] Many jurors may add this to the list of complaints about the civic obligation of jury duty. Others may actually prefer that their names not be used in court.

As indicated in the Klausner-Munoz Memorandum, the only reason for this procedure was administrative convenience. The procedure was characterized as an "interim measure" required by the "staggering volume of minute orders and reporter transcripts (nearly 1,000,000 pages annually) that the clerks and reporters must now review and redact."[4] However, with the passage of over a year's time, that backlog of transcripts containing jurors'

[3]Defense counsel further objected that appellant was denied a fair trial because the jury would speculate that there was some reason related to appellant's dangerousness which required the jurors' names be kept secret. However, the trial court properly indicated it would admonish the jury that such a procedure is required all criminal cases and has nothing to do with any particular defendant.

Appellant contends on appeal that protecting the identity of jurors in the record provides a wall behind which to hide and weakens juror accountability, subverting the due process requirement of proof beyond a reasonable doubt. On the other hand, it can be just as logically argued that protecting juror identity encourages jurors to act without fear and to proceed on the courage of their convictions. Moreover, we note that unlike in Los Angeles County, in the context of a small community, where spectators and others present in the courtroom likely see acquaintances and neighbors serving on a jury, omitting or redacting juror identification information from the appellate record may be of little practical consequence.

[4]We note that the ad hoc committee referred to in the Klausner-Munoz Memorandum subsequently adopted the following procedures to be used in selecting a jury in a criminal case: "1. Reporters will be given a copy of the jurors['] names and numbers in the computerized list provided with each venire. [¶] 2. All references to jurors prior to being seated in the jury box will be by name AND the last four digits of their Juror Identification Number. For example, when names are called out to be seated, the Clerk will call out 'John Jones, number 2234.' References during hardship or other contacts will also be by name and number. [¶] 3. Once jurors are seated, ALL further references will be solely by their seat number. [¶] 4. The Jury list of names and numbers will be marked as a Court Exhibit and

names has presumably almost vanished. Computer technology may also provide a mechanism to avoid the impersonality of the present process.

Moreover, we also note that the jury voir dire is not a part of the normal record on appeal. (Cal. Rules of Court, rule 33(a).) To obtain a reporter's transcript of voir dire, appellant must file an application with the trial court for the additional record (Cal. Rules of Court, rule 33(b)(2)), or file a motion in the Court of Appeal to augment the appellate record. (See *People v. Gaston* (1978) 20 Cal.3d 476 [143 Cal.Rptr. 205, 573 P.2d 423].) Most criminal appeals do not involve jury voir dire issues, and in only a small percentage of cases is the transcript of the jury voir dire prepared.[5]

Accordingly, the Los Angeles Superior Court may at some time wish to revisit this issue and promulgate new and different guidelines for the trial courts and the reporters.

### No Denial of the Constitutional Right to a Public Trial

We hold that a procedure which does not use jurors' names aloud in court and uses instead juror identification numbers does not deny appellant his right to a public trial. There is no constitutional requirement that the jurors' names be spoken in the courtroom.

First, contrary to appellant's assumption, the jury was not anonymous, as the court and counsel had available to them a document identifying the jurors by name. (Cf. *People v. Phillips* (1997) 56 Cal.App.4th 1307, 1309-1310 [66 Cal.Rptr.2d 380] [harmless error to withhold the names of prospective jurors from trial counsel].) Second, even an anonymous jury is constitutional when warranted by the facts, and any prejudice in the ability to select a jury is not assumed but must be established, principally by analysis of the voir dire. (See *U.S. v. Salvatore* (5th Cir. 1997) 110 F.3d 1131, 1143-1144; *U.S. v. Branch* (5th Cir. 1996) 91 F.3d 699, 723-725.) Appellant does not allege any preclusion of appropriate biographical or personal juror information during voir dire. (See *U.S. v. Branch, supra,* 91 F.3d 699, 723.) Finally, appellant's right to a public trial was not denied, as the trial was

---

sealed. [¶ 5. Upon a request for an appellate transcript, if voir dire is necessary, the reporter will redact the jurors['] names out and leave the numbers in. [¶ 6. In the event a daily is being prepared, the reporters will redact the voir dire transcripts and omit all juror names before providing them to counsel. [¶ 7. If questionnaires are used, the jurors should identify themselves on the forms only by number." (L.A. Super. Ct. Mem. (Dec. 3, 1996).)

[5]With respect to preserving for appeal challenges brought pursuant to *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], counsel may need to protect the record where the ethnicity of a name underlies the challenge. For example, counsel could indicate that the juror peremptorily excused has a surname of a particular ethnic group. In some cases, the ethnicity of a name may be disputed. In such instances, the name would need to be included in the appellate record, albeit in a sealed condition.

"open to the general public at all times." (*People* v. *Woodward* (1992) 4 Cal.4th 376, 382 [14 Cal.Rptr.2d 434, 841 P.2d 954], citing U.S. Const., Amends. VI, XIV; Cal. Const., art. I, § 15; Pen. Code, § 686, subd. 1.) The jurors' faces were visible to anyone who cared to visit the courtroom. The trial was public in every practical and constitutional sense.[6]

## II. *Appellant's sentence was not cruel and/or unusual punishment.*

■ Appellant contends that under the three-pronged test set forth by the United States and California Supreme Courts (*Solem* v. *Helm* (1983) 463 U.S. 277, 290-300 [103 S.Ct. 3001, 3009-3015, 77 L.Ed.2d 637]; *In re Lynch* (1972) 8 Cal.3d 410, 425-429 [105 Cal.Rptr. 217, 503 P.2d 921]), his sentence is unconstitutional. This analysis requires the court to examine the nature of the offense and of the offender, "with particular regard to the degree of danger both present to society," to compare the penalty at issue with those imposed for more serious offenses, and to compare the challenged penalty with those for the same offense in other jurisdictions. (*In re Lynch, supra*, at pp. 425-427.) Even assuming this test is appropriate in an Eighth Amendment analysis (see *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [111 S.Ct. 2680, 115 L.Ed.2d 836]; *People* v. *Cooper* (1996) 43 Cal.App.4th 815, 820-824 [51 Cal.Rptr.2d 106]), we cannot conclude appellant's sentence of 25 years to life under the Three Strikes law resulted in cruel and/or unusual punishment.[7]

Appellant argues that the current offense was essentially a minor shoplifting and a "wobbler" which could have been prosecuted as a misdemeanor, there was no monetary loss to the store because the pants appellant took were recovered, and appellant was motivated by the need to get a car seat for his child. He further urges that his two prior "strikes" were burglaries in 1983, which he committed on the same day at two houses across the street from each other and when he was nineteen years old, and that his other prison commitments were for the nonviolent felony of drug possession.

The probation report reveals additional details. Appellant was sentenced in 1984 to concurrent four-year prison terms for the two burglaries, violated parole, was sentenced in 1986 to sixteen months in prison for possession of drugs in prison, was convicted in 1987 of a misdemeanor battery, was

---

[6]Nothing in the record on appeal indicates that interested members of the public or the news media were precluded from ascertaining jurors' names during the trial.

[7]The trial court in the present case denied a motion to reduce the matter to a misdemeanor, knew it had discretion under Penal Code section 1385 to strike one of the priors but refused to do so, and also refused to strike a prior on cruel and unusual punishment grounds. However, the court imposed a term of 25 years to life on only count 1 (commercial burglary), staying imposition of a similar sentence on count 2 (petty theft with a prior), and also stayed imposition of sentence on each of 4 prior prison term enhancements.

sentenced in 1988 to sixteen months in prison for possession of a controlled substance, was sentenced in 1990 to a suspended four-year prison term for sale of a controlled substance and placed in a narcotic addict commitment program (but after release as an outpatient was sent to prison). In 1991 appellant was again sentenced to a four-year prison term for a narcotics offense, and in 1996 was convicted of the misdemeanor of being under the influence of a controlled substance. At the time of the present offense, appellant had a spousal abuse charge pending, as well as a warrant and a pending pretrial hearing on an alleged torture offense.

Appellant's recidivism is thus highlighted by several prior prison terms and parole violations, and an unsuccessful narcotics rehabilitation commitment. His record reveals an almost unrelenting pattern of criminal conduct. The trial court observed that appellant's record is "the typical pattern of a drug user," who cannot "break" a "drug problem," cannot be self-supporting, and maintains his drug habit by "steal[ing] and tak[ing]other people's property." Prior attempts at rehabilitation and deterrence have failed.

Nor does a comparison of inter- and intra-jurisdictional punishments compel a finding of cruel and/or unusual punishment. "All recidivists with prior serious felonies are treated the same under the statutory scheme" (*People* v. *Weaver* (1984) 161 Cal.App.3d 119, 127, fn. 2 [207 Cal.Rptr. 419]), and appellant has failed to establish that his sentence is disproportionate when compared to recidivist statutes in other jurisdictions. (*People* v. *Cooper, supra,* 43 Cal.App.4th at pp. 826-828.)

Accordingly, appellant's sentence under the Three Strikes law does not amount to unconstitutionally cruel and/or unusual punishment.[8]

DISPOSITION

The judgment is affirmed, and the trial court is directed to amend the abstract of judgment to reflect the imposition of the $2,000 restitution fine.

Nott, J., and Zebrowski, J., concurred.

A petition for a rehearing was denied January 5, 1998, and appellant's petition for review by the Supreme Court was denied March 18, 1998. Mosk, J., was of the opinion that the petition should be granted.

---

[8]Finally, respondent correctly contends that the abstract of judgment should be amended to reflect the $2,000 restitution fine ordered by the trial court. (See *People* v. *Boyde* (1988) 46 Cal.3d 212, 256 [250 Cal.Rptr. 83, 758 P.2d 25]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337].)