The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Steven ROBLES, Defendant–Appellant.

No. 06CA0934.

Colorado Court of Appeals, Div. V.

March 31, 2011.

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Firm of Richard A. Hostetler, Richard A. Hostetler, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Steven Robles, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree felony murder, second degree kidnapping, harassment by stalking, and a crime of violence. We affirm.

## I. Background

The prosecution presented evidence showing the following.

Defendant and the victim, J.E., began dating in 2000. They had an "off-again on-again" relationship for the next two years, during which defendant physically abused J.E. By September 2002, J.E. had attempted to end her relationship with defendant and had begun dating someone else.

Between September 19 and 24, 2002, defendant persistently called J.E., followed her, and publicly confronted her several times. During certain of these confrontations, defendant yelled at J.E., tried to physically force her into his car or out of the car she was in, and stole her purse and cell phone. Several of J.E.'s friends testified that during that time, J.E. said she was afraid of defendant.

One of J.E.'s friends, N.V., testified that on the evening of September 24 she was on the phone with J.E. when J.E. suddenly said she would have to call her back and hung up. N.V. quickly called J.E. back, but no one answered. She continued to call until J.E.'s four-year-old son answered and told her that J.E. "went out the window."

J.E. did not report to work the next day, and her brother reported her missing to the police. The only person who testified as to having seen J.E. alive after September 24 was A.R., with whom defendant was then living. A.R. said that when he came home from work on September 25, he saw J.E. and defendant sitting together on the couch, watching television.

J.E.'s body was found near an I–76 frontage road in Weld County on September 26, 2002. She had been shot several times in the head and body.

The People charged defendant with first degree murder, first degree felony murder, second degree kidnapping, harassment by stalking, sexual assault, and a crime of violence for events occurring between September 18 and September 26, 2002. A jury convicted defendant of the offenses noted in the opening paragraph of this opinion. The district court sentenced defendant to a term of life without parole in the custody of the Department of Corrections.

## II. Discussion

On appeal, defendant contends that the district court erred by (1) denying his motion either to strike A.R. as a witness or to continue the trial; (2) impaneling an "anonymous" jury; (3) admitting certain of J.E.'s statements through the testimony of three

witnesses; (4) denying his motion for a mistrial based on prosecutorial misconduct in closing argument; (5) improperly instructing the jury on the appropriate standard for reasonable doubt; (6) insufficiently responding to one of the deliberating jury's questions; and (7) failing to properly investigate alleged juror misconduct. We address and reject each of these contentions in turn.

## A. Witness Disclosure

Defendant contends that the district court erred by denying his motion either to strike A.R. as a witness or to continue the trial. He argues that prosecutors told his counsel too late that A.R. had been located and would testify.

Police initially interviewed A.R. in October 2002. Both parties had access to the recording of that interview. In October 2003, the prosecution formally identified A.R. as a prosecution witness and disclosed his address in a list of witnesses filed with the court. A.R. was subpoenaed to appear at a preliminary hearing in January 2004; however, he failed to appear. A.R. was not located until he was arrested on December 20, 2005, about two weeks before the start of defendant's trial.

A prosecution investigator interviewed A.R. on December 20 and 21, 2005. Though the prosecutors attended a pretrial motions hearing on December 22, they did not disclose to defendant's counsel that A.R. had been located and interviewed until December 29. The next day they moved either to withhold disclosure of his address from defendant or for a protective order, disclosed the investigator's notes from the recent interviews to defendant's counsel, and made A.R. available for defendant's counsel to interview. In response, on January 3, 2006, two days before trial, defendant moved either to strike A.R. as a witness or to continue the trial.

The district court held a motions hearing on January 3. As relevant here, defendant's

counsel asserted that the prosecution's failure to disclose, as soon as practicable, that A.R. had been located and interviewed violated defendant's right to confront and cross-examine a critical prosecution witness. Counsel also claimed that, absent a continuance, they would be unable to fully investigate A.R.'s recent statements, which allegedly were inconsistent with his October 2002 statements and therefore relevant for cross-examination and impeachment purposes. Therefore, they argued, a continuance was necessary to protect defendant's right to effective assistance of counsel. The prosecutor responded that because A.R. had expressed fear for his personal safety, disclosure of his apprehension had been withheld until that fear could be investigated and prosecutors could arrange for his safety.

The district court denied defendant's motion, concluding that the delay was appropriate in light of the legitimate concern for A.R.'s safety and that the delay did not prejudice defendant.

Prosecutors have a duty by rule to disclose the names and addresses of and statements by witnesses who will testify at trial. Crim. P. 16(I)(a)(1)(I), (VII); *but see United States v. Ashley*, 274 Fed.Appx. 693, 697 (10th Cir. 2008) (unpublished decision) ("the Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information" (citing *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977))). The crux of defendant's argument is that prosecutors did not comply with the "spirit" of that rule.[1]

We review the district court's resolution of discovery issues for an abuse of discretion. *See Salazar v. People*, 870 P.2d 1215, 1218 (Colo.1994); *People in Interest of A.D.T.*, 232 P.3d 313, 316 (Colo.App.2010); *People v. Denton*, 91 P.3d 388, 391 (Colo.App. 2003). A court abuses its discretion if its

---

1. Though defendant also notes that prosecutors have a constitutional duty (and a duty by rule) to disclose material, exculpatory information, *see* Crim. P. 16(I)(a)(2); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), he does not explain how A.R.'s testimony was excul-

patory nor does he develop any argument that there was a *Brady* violation. Therefore, we need not address that issue. *See People v. Hill*, 228 P.3d 171, 176–77 (Colo.App.2009); *People v. Simpson*, 93 P.3d 551, 555 (Colo.App.2003). In any event, we perceive no *Brady* violation.

decision is manifestly arbitrary, unreasonable, or unfair, or infringes on a defendant's constitutional rights. *See People v. Villano,* 181 P.3d 1225, 1228 (Colo.App.2008); *Denton,* 91 P.3d at 391. However, even if the court abuses its discretion, we will disturb its decision only if the defendant establishes that he suffered prejudice. *Salazar,* 870 P.2d at 1220; *People v. Alley,* 232 P.3d 272, 274 (Colo.App.2010).

■ The record shows that the prosecution delayed disclosing that A.R. had been apprehended to investigate his statements that he believed defendant was responsible for a shooting that occurred at his house soon after his initial interview; that he had allowed his house to go into foreclosure rather than live there because he knew defendant had keys to his house and the control for the alarm system; and that he had fled to Mexico out of fear of defendant. On appeal, defendant does not contest the court's finding that the prosecution had a reasonable concern for A.R.'s safety. The delay to allow the prosecutors to investigate the matter and take appropriate precautions to assure A.R.'s safety was not lengthy. Under these circumstances, we conclude that the prosecutors did not violate their discovery obligations (or any conceivable constitutional right of defendant) because, in light of the concern for A.R.'s personal safety, the disclosure was made as soon as practicable. *See People v. Dist. Court,* 933 P.2d 22, 25–26 (Colo.1997) (recognizing that concern about a witness's safety may justify refusal to provide a witness's address (and certain other information) without violating the right of confrontation).

■ Further, defendant has failed to show that he was prejudiced by the nine-day disclosure delay. As noted, on December 29, the prosecution disclosed that A.R. had been located and made the interview notes available to the defense on December 30. A.R. did not testify until January 12, meaning defendant's counsel had nearly two weeks to interview A.R. and to conduct any necessary investigation. Defendant fails to explain specifically why this amount of time was inadequate or how the result of the trial would have been different had his counsel learned of A.R.'s availability on December 20 rather than December 29. And we see no indication in the record that defendant's counsel was unprepared at trial or unable to thoroughly and competently cross-examine A.R. *See Salazar,* 870 P.2d at 1220, 1222–23 (five-day delay in disclosing test results not prejudicial where, among other things, the defendant was able to thoroughly cross-examine the witness about his findings); *People v. Scarlett,* 985 P.2d 36, 42 (Colo.App.1998) (no abuse of discretion in denying a continuance "even when a criminal defendant asserts a need to prepare to meet unexpected or newly discovered evidence or testimony"); *People v. Chambers,* 900 P.2d 1249, 1253 (Colo.App. 1994) (no abuse of discretion in denying a continuance where, at the time of the late endorsement of a witness, the witness was made available to the defendant, and the defendant was able to competently cross-examine him).

Therefore, we conclude that the district court did not abuse its discretion by denying defendant's motion to strike A.R. or to continue the trial.

### B. Anonymous Jury

Defendant contends that the district court erred by impaneling an anonymous jury, thereby violating his constitutional rights to a presumption of innocence and to a fair trial by an impartial jury. U.S. Const. amends. V, VI; Colo. Const. art. II, §§ 16, 25.

When the prospective jurors first entered the courtroom for voir dire, the court explained that the questionnaires they had filled out, which included their names and other identifying information, would be copied and distributed to counsel for both parties for use during the jury selection process and would then be destroyed.[2] Counsel re-

---

**2.** Juror questionnaires contain each juror's [n]ame, sex, date of birth, age, residence, and marital status; the number and ages of children; educational level and occupation; whether the juror is regularly employed, self-employed, or unemployed; spouse's occupation; previous juror service; present or past involvement as a party or witness in a civil or criminal proceeding; and such other information as the jury commissioner deems appropri-

ceived the questionnaires. Thereafter, in chambers and with defendant present, the court and counsel from both sides individually interviewed the prospective jurors who had indicated potential conflicts or hardships on their questionnaires. During this process, the court and counsel referred to some jurors by name and some by number. However, once general voir dire began in open court, jurors were referred to by number during questioning. When jurors were excused, they were referred to by name.

"Generally, an 'anonymous jury' describes a situation where juror identification information is withheld from the public *and the parties themselves.*" *State v. Sandoval*, 280 Neb. 309, 788 N.W.2d 172, 195 (2010) (emphasis added); *accord People v. Williams*, 241 Mich.App. 519, 616 N.W.2d 710, 712–13 (2000); *State v. Tucker*, 259 Wis.2d 484, 657 N.W.2d 374, 378 (2003). The jurors here were not truly anonymous because defendant had their identifying information. *See People v. Hanks*, 276 Mich.App. 91, 740 N.W.2d 530, 533 (2007); *Williams*, 616 N.W.2d at 713; *Sandoval*, 788 N.W.2d at 195; *Tucker*, 657 N.W.2d at 378–79. It is therefore more accurate to refer to the jury here as a "numbers" jury rather than an "anonymous" jury. *See Sandoval*, 788 N.W.2d at 195; *Tucker*, 657 N.W.2d at 378.

Some courts have concluded that, because referring to jurors by numbers can raise some of the same concerns as anonymous juries, the analysis applicable to anonymous juries applies to numbers juries. *See State v. Brown*, 280 Kan. 65, 118 P.3d 1273, 1280–81 (2005) (applying anonymous jury analysis where the court decided to refer to the jurors by number rather than by name); *Sandoval*, 788 N.W.2d at 195–96 (applying anonymous jury analysis where the parties' counsel had the jurors' information, but the court ordered the defendant's counsel not to give that information to the defendant and required that the jurors be referred to by number); *Tucker*, 657 N.W.2d at 378 (applying anonymous

jury analysis where both parties had access to the jurors' names, but the jurors were referred to only by numbers in open court). Other courts have declined to apply anonymous jury analysis to numbers juries. *See People v. Goodwin*, 59 Cal.App.4th 1084, 69 Cal.Rptr.2d 576, 581 (1997); *Hanks*, 740 N.W.2d at 533. We believe the former approach is preferable, and therefore take that approach here.

The use of an anonymous jury is not inherently prejudicial. *See Williams*, 616 N.W.2d at 713–14; *State v. Bowles*, 530 N.W.2d 521, 529–30 (Minn.1995). But using an anonymous jury, or even referring to jurors by number, may, depending on the circumstances, create an impression in jurors' minds that the defendant is a dangerous individual from whom they must be protected, thereby infringing on the defendant's constitutional right to a presumption of innocence. *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir.1994); *Tucker*, 657 N.W.2d at 380–81. Further, depending on the nature of the identifying information that is withheld, a defendant's ability to effectively voir dire jurors and use challenges to dismiss prospective jurors could be compromised. *See Sandoval*, 788 N.W.2d at 195.

■ Thus, in deciding whether to impanel an anonymous jury, a court must balance the "need to ensure juror safety against the defendant's right to the presumption of innocence and the ability to conduct an effective voir dire." *Brown*, 118 P.3d at 1279; *accord Hanks*, 740 N.W.2d at 532; *Sandoval*, 788 N.W.2d at 197–98. Therefore, "a court should not impanel [an anonymous] jury unless it (1) concludes that there is a strong reason to believe the jury needs protection and (2) takes reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his or her fundamental rights are protected." *Sandoval*, 788 N.W.2d at 195–96; *accord Brown*, 118 P.3d at 1279; *State v. Ross*, 174 P.3d 628, 637 (Utah 2007); *Tucker*, 657 N.W.2d at 381.[3]

ate after consulting with the judges in the judicial district.
§ 13–71–115(1), C.R.S.2010.

**3.** We observe that, in addition to the jurisdictions cited in the text of this opinion, many other

jurisdictions have approved of the use of anonymous juries in appropriate circumstances, applying the same standards and considerations noted herein. *See, e.g., United States v. Darden*, 70 F.3d 1507, 1532–33 (8th Cir.1995); *United States v.*

We review a district court's decision to impanel an anonymous jury for an abuse of discretion. *Williams*, 616 N.W.2d at 712; *Sandoval*, 788 N.W.2d at 194; *Ross*, 174 P.3d at 637; *Tucker*, 657 N.W.2d at 378; *see also People v. Lefebre*, 5 P.3d 295, 299 (Colo.2000) ("Trial judges have significant leeway in conducting voir dire ... because the judge is ultimately responsible for providing an impartial panel of jurors."). And where, as here, the defendant fails to preserve the issue with a contemporaneous objection, we review for plain error. *See Ross*, 174 P.3d at 636 (where impaneling of an anonymous jury was a matter of first impression, and the defendant failed to preserve the issue with a contemporaneous objection, the plain error standard of review applied). Plain error review entails a three-part inquiry: (1) whether there was error; (2) whether the error was plain or obvious; and (3) whether the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

### 1. Whether the Jury Needs Protection

In determining whether the jury needs protection, the court may consider, among any other relevant facts, (1) the defendant's involvement in organized crime; (2) the defendant's participation in a group with the capacity to harm jurors; (3) any past attempts by the defendant to interfere with the judicial process or witnesses; (4) the potential penalty for any conviction; and (5) extensive publicity that could make the jurors more vulnerable to intimidation and harassment. *United States v. Mansoori*, 304 F.3d 635, 650–51 (7th Cir.2002); *United States v. Krout*, 66 F.3d 1420, 1427 (5th Cir.1995); *Brown*, 118 P.3d at 1279; *Sando-*

*val*, 788 N.W.2d at 196; *Tucker*, 657 N.W.2d at 381.

The record does not show that the prosecution or the defense requested that the jurors be referred to by numbers. Rather, the court appears to have raised the issue on its own, saying, "[T]he other thing that we're doing now, as you notice, the numbers for the jurors. We're doing that. We'll refer to all jurors by numbers. They'll be called into the box by jury number and that's the way we'll do it." Neither party objected to that procedure, and the court made no express finding that the jury needed protection.

The district court erred in failing to make a finding that referring to jurors by number was necessary to protect them. But we conclude, for the reasons discussed below, that the error does not cast serious doubt on the reliability of the judgment of conviction.[4]

### 2. Reasonable Precautions to Minimize Prejudice

As noted, the use of an anonymous (or numbers) jury potentially impacts the defendant's right to a presumption of innocence and right to participate meaningfully in jury selection. We examine each such right here in the context of the facts of record.

#### a. Presumption of Innocence

At the beginning of the general voir dire process, and after giving the prospective jurors brief, introductory instructions, the district court said, "I'm going to ask the bailiff to call the numbers of—14 jurors...." The bailiff did so.

Once the first fourteen prospective jurors were seated in the jury box, the court repeated its previous instructions regarding the presumption of innocence, burden of proof, reasonable doubt, and the jurors'

---

*Edmond*, 52 F.3d 1080, 1090–93 (D.C.Cir.1995); *State v. Samonte*, 83 Hawai'i 507, 928 P.2d 1, 10–16 (1996); *Major v. State*, 873 N.E.2d 1120, 1125–28 (Ind.Ct.App.2007); *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274, 278–83 (2001); *State v. Sundberg*, 349 Or. 608, 247 P.3d 1213, 1217–22 (Or.2011); *State v. Ivy*, 188 S.W.3d 132, 142–45 (Tenn.2006).

**4.** Moreover, as the concurrence points out, given the lack of appellate authority in this jurisdiction

on the issue of anonymous juries, any error in failing to make this finding arguably cannot be said to have been obvious. *Ross*, 174 P.3d at 636; *see also People v. Vigil*, 251 P.3d 442, 447 (Colo.App.2010) (in light of lack of Colorado law supporting the defendant's position, any error was not obvious). The relative uniformity of the law in other jurisdictions, however, tends to make the error appear more obvious.

duties regarding consideration of the evidence. One of the prosecutors then introduced himself and his co-counsel, and said, "[Y]ou now have me at a disadvantage because I don't know any of your names. I'm going to address you by juror number. It seems to me kind of a rude thing to do but that's how we do it, so I'm going to call you by number...."

Neither the court nor either of the parties made any further comment on the use of numbers rather than names. The court did not draw attention to this procedure, and there is no evidence that the jurors believed it to be unusual. Nor did the court or the parties say anything to the jurors indicating that they would be referred to by number because defendant was dangerous. *See Williams,* 616 N.W.2d at 713–14.[5]

▮ Under these circumstances, we conclude that the district court did not compromise defendant's presumption of innocence by referring to the jurors by number rather than by name. *See id.* at 713; *Sandoval,* 788 N.W.2d at 198–99; *Ross,* 174 P.3d at 638 (a court can reduce the risk of prejudice to a defendant's presumption of innocence by "taking care to avoid calling attention to the anonymity of the jury or otherwise suggesting that, owing to its uniqueness, jury anonymity is reserved for a trial of particularly heinous crimes or dangerous and obviously guilty defendants").

#### b. Ability to Conduct Meaningful Voir Dire

▮ Defendant was present during the entire jury selection process, and both sides had access to the unredacted juror questionnaires throughout. *See* § 13–71–115(2), C.R.S.2010 ("Unless the court orders otherwise, the jury commissioner shall provide copies of the appropriate completed questionnaires to the trial judge and counsel for use during jury selection."). The court did not limit the scope of voir dire questioning, and there is no indication in the record that

defendant was unable to conduct a complete and meaningful voir dire of each prospective juror.

Therefore, we conclude that the district court's chosen procedure did not compromise defendant's ability to conduct a meaningful voir dire. *See People v. Vigil,* 718 P.2d 496, 500 (Colo.1986); *see also Hanks,* 740 N.W.2d at 533; *Williams,* 616 N.W.2d at 713; *Sandoval,* 788 N.W.2d at 198 (no abuse of discretion where the jurors were referred to by number during voir dire, but the attorneys had full access to their biographical information and were able to extensively question them during voir dire); *Ross,* 174 P.3d at 637 ("Effective voir dire, one in which counsel and the trial court are able to fully explore and expose bias, is a powerful antidote to any prejudice, including that which might result from an anonymous jury.").

In sum, we perceive no adverse impact on defendant's rights to a presumption of innocence and to meaningfully question potential jurors. Therefore, we conclude that the district court did not reversibly err in allowing the jurors to be referred to by number.

#### C. Hearsay

Defendant contends that the district court erred by admitting J.E.'s hearsay statements, to the effect that she was afraid of defendant and believed that he might kill her and then kill himself, through the testimony of Officer Chavez (whom J.E. was then dating), A.W., and J.H.

We review the district court's evidentiary rulings for an abuse of discretion. *People v. Greenlee,* 200 P.3d 363, 366 (Colo.2009); *People v. Mapps,* 231 P.3d 5, 11 (Colo.App.2009). Because the parties agree that defendant preserved the issue with contemporaneous objections, we review any error under a harmless error standard. *See Mapps,* 231 P.3d at 11 (error is harmless where it does not "substantially influence the verdict or impair the fairness of . . . [the] trial").

---

5. Some courts have held that if a court decides to impanel an anonymous jury, it should instruct the jury in a way designed to eliminate any implication of the defendant's guilt by giving jurors a plausible and nonprejudicial reason for not disclosing their identities. *See, e.g., Ross,* 174 P.3d at 637. We need not decide in this case whether any such instruction is ordinarily required.

Hearsay "is a statement other than one made by the declarant while testifying at the trial ... offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is generally inadmissible unless it falls into one of several enumerated exceptions. CRE 803, 804(b), 807.

■ In a pretrial motion, the prosecution notified defendant of its intent to introduce J.E.'s hearsay statements through witness testimony. Defendant objected to admission of the statements in his own pretrial motion, in which he argued that the statements were hearsay and that admitting them would violate his constitutional right to confrontation. After holding a hearing on these motions, the district court concluded that the statements J.E. had made to friends and family were nontestimonial; therefore, admitting them did not violate defendant's right to confrontation. See Crawford v. Washington, 541 U.S. 36, 51, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("Where testimonial evidence is at issue, ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."); Compan v. People, 121 P.3d 876, 880, 881–82 (Colo.2005) (holding that Crawford applies only to testimonial statements); see also Michigan v. Bryant, 562 U.S. ——, ——, 131 S.Ct. 1143, 1153, 179 L.Ed.2d 93 (2011) (Confrontation Clause applies only to testimonial statements); Giles v. California, 554 U.S. 353, 376, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008) (statements to friends and neighbors about domestic abuse and intimidation are not testimonial, and therefore excludable, if at all, only by hearsay rules); Davis v. Washington, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (same as Bryant).

The court then concluded that (1) Officer Chavez's testimony was admissible to show J.E.'s state of mind under CRE 803(3) [6]; and (2) A.W.'s testimony was admissible to show J.E.'s state of mind and present sense impressions, and as excited utterances under CRE 803(1)-(3). The court did not address J.H.'s testimony at that time; however, before J.H. testified at trial, defendant again objected to her testimony on hearsay grounds. The court ruled that J.H.'s testimony was admissible to show J.E.'s state of mind.[7]

Defendant's theory of defense to the kidnapping and sexual assault charges was that J.E. had consented to leave her house with him the night she disappeared and had consented to have sexual intercourse with him. Therefore, J.E.'s state of mind was relevant to the disputed issue of consent. All the statements at issue bore on J.E.'s relevant state of mind—that is, they tended to show that she would not have consented to leave with defendant or have sexual intercourse with him. See People v. Haymaker, 716 P.2d 110, 113–14 (Colo.1986) (the victim's hearsay statements were admissible under the state of mind exception because they were relevant to the issue of whether she consented to sexual intercourse with the defendant); People v. Welsh, 176 P.3d 781, 790 (Colo.App. 2007) ("[T]he hearsay statement of a victim is admissible if the victim's state of mind is relevant to a disputed issue in the case."); People v. Cardenas, 25 P.3d 1258, 1263 (Colo. App.2000) (the victim's hearsay statement that she was afraid of the defendant was admissible under the state of mind exception because it was relevant to the defendant's theory of defense). Hence, we perceive no abuse of discretion in the district court's decision to allow the testimony.

## D. Prosecutorial Misconduct

Defendant next contends that the district court erred by denying his motion for a mistrial based on the prosecutors' closing arguments. He argues that the prosecutors improperly shifted the burden of proof, thereby violating his constitutional right to due process.

---

6. The court ruled on several statements J.E. made to Officer Chavez after the alleged attempted kidnapping; however, the court admitted the statements defendant specifically challenges on appeal under CRE 803(3).

7. Defendant does not contend on appeal that admitting the statements at issue violated his right to confrontation. Therefore, we deem any such contention abandoned.

■ We review a district court's denial of a motion for a mistrial based on alleged prosecutorial misconduct for an abuse of discretion. *See Bloom v. People,* 185 P.3d 797, 807 (Colo.2008) (appellate court reviews the denial of a mistrial for an abuse of discretion); *People v. Price,* 240 P.3d 557, 560 (Colo.App.2010) (same); *see also Wend v. People,* 235 P.3d 1089, 1096–97 (Colo.2010) (appellate court reviews allegations of prosecutorial misconduct for an abuse of discretion); *People v. Strock,* 252 P.3d 1148, 1153 (Colo.App.2010) (same).

■ In closing argument, counsel may comment on the evidence and the reasonable inferences that may be drawn therefrom, but may not misstate the evidence or the law, inflame the jury's passions or prejudices, or assert a personal opinion as to the defendant's guilt or innocence or a witness's credibility. *Domingo–Gomez v. People,* 125 P.3d 1043, 1050 (Colo.2005); *People v. Gladney,* 250 P.3d 762, 769 (Colo.App.2010); *People v. Lucas,* 232 P.3d 155, 165 (Colo.App.2009). "[P]rosecutors have wide latitude in the language and style they choose to employ." *People v. Villa,* 240 P.3d 343, 358 (Colo.App. 2009); *see Gladney,* 250 P.3d at 769. Therefore, we evaluate allegedly improper statements "in the context of the argument as a whole and in light of the evidence before the jury." *Strock,* 252 P.3d at 1153; *see People v. Kendall,* 174 P.3d 791, 797 (Colo.App. 2007). In doing so, we "evaluate the severity and frequency of the misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction." *Strock,* 252 P.3d at 1153; *accord Gladney,* 250 P.3d at 769.

Defendant raises three instances of alleged prosecutorial misconduct during the prosecutors' closing and rebuttal closing arguments. We address each in turn.

First, during closing, the prosecutor described the gunshot wounds on J.E.'s head and body by asking a series of rhetorical questions, such as: "Did [J.E.] get her arm up in front of her before he shot her? Is that why there's the stippling on the arm from the gun being close and the graze wound coming across it before it went into her chest?" He concluded the series of questions by saying, "Only one man knows the answer to those questions and that man is [defendant]." During rebuttal closing argument, a different prosecutor, in responding to comments defendant's attorney had made during her closing argument about A.R.'s credibility, said, "[Defendant's counsel] was talking to you about [A.R.], she used a very interesting question. Why does he constantly lie and hide? Well, ... the same thing can be said of [defendant]."

Defendant's counsel asserted that both sets of questions and comments improperly shifted the burden of proof by implying that defendant had a duty to testify or to present some sort of defense. The court told the prosecutor that she could comment on the evidence, but could not suggest that defendant should have testified.

■ Commenting on a lack of evidence does not shift the burden of proof or implicate a defendant's decision not to testify. *See Strock,* 252 P.3d at 1155; *People v. Esquivel–Alaniz,* 985 P.2d 22, 23 (Colo.App. 1999). Furthermore, a prosecutor may " 'employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance.' " *People v. Collins,* 250 P.3d 668, 678 (Colo.App.2010) (quoting *People v. Allee,* 77 P.3d 831, 837 (Colo.App.2003)); *accord Strock,* 252 P.3d at 1153.

We conclude that the prosecutors' rhetorical questions and comments on the lack of evidence were not improper. *See Lucas,* 232 P.3d at 165; *cf. People v. Chavez,* 190 P.3d 760, 765 (Colo.App.2007) (the prosecutor's comments encouraging the jury to draw an inference of the defendant's guilt based on his decision not to testify violated the defendant's Fifth Amendment right against self-incrimination).

Second, during closing, the prosecutor summarized evidence of defendant's phone records from September 2002, and pointed to the fact that, although defendant had persistently called J.E. every day during that time, after the evening of September 24, the night J.E. disappeared, defendant never called her again. Defendant's counsel suggested in her

closing argument that the prosecution should have called some of the other numbers listed in defendant's phone records to find out what he had been doing during the week J.E. disappeared. In rebuttal closing, the prosecutor explained why such an investigation had not been conducted (investigators did not believe it would produce fruitful information) and asked the jury to use common sense when considering this lack of evidence.

Defendant contends that the prosecutor's comments during rebuttal closing improperly shifted the burden of proof. However, the prosecutor merely explained why certain evidence was not introduced and why the missing evidence did not matter. This was fair comment on the state of the evidence. *See People v. Bowles,* 226 P.3d 1125, 1134 (Colo. App.2009) (the prosecutor's comments were not improper where they merely commented on the weaknesses of the defendant's closing argument); *People v. Gibson,* 203 P.3d 571, 577 (Colo.App.2008) (a "prosecutor is entitled to comment on the absence of evidence to support a defendant's contentions"). Therefore, we conclude that in the context of the arguments as a whole, the prosecutor's comments were not improper. *See Gladney,* 250 P.3d at 770 (no misconduct where the prosecutor's comments were in response to the defendant's closing argument and, in the context of the argument as a whole, were not misleading); *Collins,* 250 P.3d at 678 ("a prosecutor has considerable latitude in replying to opposing counsel's argument").

Further, following defendant's counsel's objection, the court reminded the jury of each party's burden and stressed that defendant was not required to put forward any evidence. *See Gladney,* 250 P.3d at 766; *People v. Clark,* 214 P.3d 531, 542 (Colo.App. 2009), *aff'd,* 232 P.3d 1287 (Colo.2010). Therefore, even if the prosecutor's comments were improper, the court's immediate instruction to the jury rendered any error harmless. *See Dunlap v. People,* 173 P.3d 1054, 1088 (Colo.2007); *Bowles,* 226 P.3d at 1134.

Third, during rebuttal closing, the prosecutor made a series of statements to the effect that, for the jurors to find defendant not guilty, they "would have to believe" an im-

probable set of scenarios. Defendant contends that these statements improperly shifted the burden of proof by implying that he had the burden to prove each of the scenarios. The prosecutor's statements, however, merely pointed out weaknesses in defendant's theory of defense and suggested that the evidence showed more than mere coincidence. *See Bowles,* 226 P.3d at 1134; *Gibson,* 203 P.3d at 577; *People v. Petschow,* 119 P.3d 495, 508 (Colo.App.2004). Therefore, these comments were not improper.

### E. Reasonable Doubt Instruction

Defendant contends that the district court erred by improperly instructing the jury on the standard for reasonable doubt. He argues that the instruction given articulated the degree of certainty required for conviction below that which is constitutionally required.

■ We review de novo whether the district court properly instructed the jury on the applicable law. *People v. Reeves,* 252 P.3d 1137, 1139 (Colo.App.2010); *People v. Alvarado–Juarez,* 252 P.3d 1135, 1137 (Colo. App.2010).

Here, the jury instruction defining reasonable doubt provided:

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

This instruction tracked CJI–Crim. 3:04 (1993).

The United States Supreme Court, the Colorado Supreme Court, and divisions of this court have held that wording like that in this instruction accurately describes the standard for proof beyond a reasonable doubt. *See, e.g., Victor v. Nebraska,* 511 U.S. 1, 18–23, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *People v. Palumbo,* 192 Colo. 7, 11, 555 P.2d 521, 524 (1976); *Alvarado–Juarez,* 252 P.3d at 1137; *People v. Rubio,* 222 P.3d 355, 363–64 (Colo.App.2009); *People v. Robb,* 215 P.3d

1253, 1262–63 (Colo.App.2009). Thus, the district court did not err by using the pattern instruction.

### F. Jury Question During Deliberation

After the jury began deliberating, it sent the court the following question: "# 17 section 4 we would like some clarification on 'SEIZED & CARRIED' and if being held some where [sic] that she did not want to be could be a definition of kidnapping and/or [i]f she left voluntarily but ended up not able to leave kidnapping."[8] The court consulted with counsel from both sides before answering: "the prosecution must prove that the defendant took possession of the victim and moved her from one place to another without her consent and without lawful justification."

Defendant contends that the district court failed to answer adequately the deliberating jury's question regarding the asportation element of kidnapping. At trial, his counsel requested that the court further instruct the jury that, if lack of consent occurs only after the victim was moved, there is no kidnapping.

■■■ " 'Whether to provide the jury with additional written instructions in response to a question is a determination within the trial court's sound discretion.' " *People v. Thornton*, 251 P.3d 1147, 1152 (Colo.App. 2010) (quoting *People v. Bass*, 155 P.3d 547, 552 (Colo.App.2006)); *accord People v. Rogers*, 220 P.3d 931, 936 (Colo.App.2008). Absent evidence to the contrary, we presume the jury understood and followed the court's instructions. *Leonardo v. People*, 728 P.2d 1252, 1254 (Colo.1986); *People v. Oram*, 217 P.3d 883, 895 (Colo.App.2009) (*cert. granted* Oct. 13, 2009). However, if the jury indicates it does not understand a matter of law, the court should clarify unless

(1) the jurors can be adequately informed by directing their attention to a portion of the original instructions, (2) the request concerns matters not in evidence, or does not pertain to the law of the case, and (3) the request would call upon the court to

express an opinion upon factual matters that the jury should determine.

*Oram*, 217 P.3d at 895; *accord Leonardo*, 728 P.2d at 1254.

The jury's question indicated its confusion about the definitions of the words "seized" and "carried." The court's clarification further defined (1) "seized" by explaining that it meant defendant had to have taken possession of J.E., and (2) "carried" by explaining that it meant defendant had to have moved J.E. from one place to another. Any lingering confusion could be dispelled by reading the original instructions.

Therefore, we conclude that the district court's answer properly instructed the jury on the law and was not erroneous. *See People v. Harlan*, 8 P.3d 448, 477 (Colo.2000) ("[T]he asportation element of second degree kidnapping is the movement by the defendant of the victim from one place to another."), *overruled on other grounds by Miller*, 113 P.3d at 748; *Rogers*, 220 P.3d at 936 (holding that the district court's supplemental definition of "seized and carried" as "any movement, however short in distance" was a correct statement of the law); *People v. Metcalf*, 926 P.2d 133, 137 (Colo.App.1996) (defining " 'seize' to mean 'to take possession of forcibly, to grasp, to snatch or to put in possession' " (quoting *Black's Law Dictionary* 1219 (5th ed. 1979))); *see also Leonardo*, 728 P.2d at 1255 (the jury should be referred back to the original instructions when it is apparent that it overlooked some portion of the instructions or where the instructions clearly answer the jury's question); *Thornton*, 251 P.3d at 1152 (same).

### G. Juror Misconduct

Lastly, defendant contends that the district court erred by failing to properly investigate alleged juror misconduct, thereby violating his constitutional rights to due process and a fair trial by an impartial jury.

■■■ When there have been allegations of juror misconduct, the district court has broad

---

**8.** Instruction No. 17 set forth the elements the prosecution was required to prove for the jury to find defendant guilty of second degree kidnapping: (1) that defendant (2) in the state of Colo-

rado, on or about September 24 to September 26, 2002 (3) knowingly (4) seized and carried J.E. from one place to another (5) without her consent and (6) without lawful justification.

discretion to determine what form of hearing, if any, is required. *People v. Mollaun*, 194 P.3d 411, 416 (Colo.App.2008); *People v. King*, 121 P.3d 234, 241 (Colo.App.2005). We will not overturn the district court's determination absent a showing of an abuse of discretion. *Mollaun*, 194 P.3d at 416; *King*, 121 P.3d at 241.

CRE 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

 This rule applies to inquiries into juror deliberations both before and after the verdict is rendered. *Mollaun*, 194 P.3d at 416. Under this rule, the court may not inquire into any juror's thought process or the effect of anything upon his mind or emotions. *People v. Harlan*, 109 P.3d 616, 625 (Colo.2005); *Garcia v. People*, 997 P.2d 1, 2 (Colo.2000); *People v. Ferrero*, 874 P.2d 468, 474 (Colo.App.1993). Although discussions between jurors and third persons do not fall within the scope of CRE 606(b), discussions among the jurors themselves do; therefore, the court may not inquire about them. *People v. Garcia*, 752 P.2d 570, 584 (Colo.1988).

On the third day of jury deliberations, the bailiff told the court that one of the jurors had contacted her and had asked to speak with the judge. The juror told the bailiff that she was having difficulties with some of the other jurors. The court consulted with counsel from both sides and allowed them to interview the bailiff about the conversation. The court then denied defendant's attorney's requests to suspend deliberations to interview the juror in question and to further investigate whether juror misconduct had occurred.

 Later that day, the court received a question from the jury which asked, "Would it be possible to switch Foreperson [sic] because of concerns for theirselves [sic][?]" The court consulted with counsel from both sides and interviewed the foreman. After instructing the foreman that he was not to say anything concerning the emotions or mental processes of the jury with respect to the deliberative process, the court asked him whether the "concerns" mentioned in the question involved threats of violence or physical conduct, or any sort of abuse toward any of the jurors. The foreman responded:

They're just situations where they put theirselves [sic] that they're not comfortable with.... Retributions that could come after the court right now is I guess what's got them concerned right now. It's mainly me, but it's just that I'm not comfortable. I don't think that I'm guiding this jury.... It's just a mental thing.... There's nothing. I haven't been threatened. Nobody on the jury has been threatened. Nobody has been confronted by anybody on the jury.

The foreman further indicated that although he was not comfortable as foreman, he was fine with remaining foreman if changing his position would cause too much trouble or delay for the court.

Defendant's attorney then asked the court to investigate further into the juror's contact with the bailiff and the issue of switching forepersons. The court denied both requests, concluding that any further inquiry would impermissibly delve into the deliberative process.

 These facts raise the issue of juror misconduct in the form of juror coercion. "[C]ourts may consider evidence of objective circumstances and overt coercive acts by members of a jury only if the alleged coercive acts rise to the level of continuous violent, abusive, and profane language and con-

duct threatening or amounting to physical violence against a juror." *Mollaun,* 194 P.3d at 418.

The court's inquiry sufficiently established that none of the jurors had been threatened, attacked, or abused. Therefore, we conclude that the court did not abuse its discretion in declining to further investigate either of the alleged instances of juror misconduct. *See id.* at 418–19 (a court should not receive evidence pertaining to alleged juror coercion that does not rise to the level of physical violence or the threat thereof); *People v. Rudnick,* 878 P.2d 16, 22 (Colo.App.1993) (evidence of juror coercion "must reveal more than expressions of frustration, impatience, annoyance, or empty threats," and "[e]vidence that psychological intimidation was exerted against [a] juror, along with the question whether the juror's assent to the verdict actually was coerced ... are not competent to impeach the verdict"); *Ferrero,* 874 P.2d at 474 (holding that evidence about a juror's "physical condition and its effect on her ability to hold out against the other jurors' yelling constituted an improper inquiry into her thought processes and emotions" was inadmissible under CRE 606(b)); *People v. Harrison,* 746 P.2d 66, 68 (Colo.App.1987) ("The trial court determined correctly that the witness' testimony as to the juror's fear was an improper inquiry into his thought processes and emotions and was, therefore, inadmissible under CRE 606(b).").

The judgment is affirmed.

Judge GRAHAM concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While concurring in the result, I write separately to explain that because, in my view, the "anonymous jury" error determined by the majority was not obvious, considering whether it casts "serious doubt on the reliability of the judgment of conviction," *People v. Miller,* 113 P.3d 743, 750 (Colo.2005), is unnecessary.

Plain error review has been described as implicating the trial judge's competence. *See, e.g., People v. Beilke,* 232 P.3d 146, 152 (Colo.App.2009) ("Plain error is error that is so clear-cut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection."). Be that as it may, "district judges are not expected to be prescient." *Chapman v. Chapman,* 147 Idaho 756, 215 P.3d 476, 481 (2009); *cf. People v. Rector,* 248 P.3d 1196 (Colo.2011) ("[a] trial court cannot be expected to intuit the challenge" to expert testimony).

Neither the Supreme Court nor any Colorado appellate decision has addressed the anonymous jury issue. More importantly, under similar circumstances some courts have recognized that the jury was not truly anonymous, because, as here, the defendant and his counsel had access to the jurors' names and their biographical information. *See, e.g., People v. Hanks,* 276 Mich.App. 91, 95, 740 N.W.2d 530, 533 (2007); *People v. Goodwin,* 59 Cal.App.4th 1084, 1091, 69 Cal. Rptr.2d 576, 579 (1997).

Hence, I would conclude that the error was not obvious. *See, e.g., State v. Danney,* 2010 WL 4366393, *4–5 (Idaho Ct.App.2010) (error not obvious where "[n]either the United States Supreme Court nor Idaho appellate courts have spoken to this issue" and "[t]o the extent that it has been addressed, the jurisprudence in the area is conflicting"); *Jonas v. State,* 773 P.2d 960, 965 (Alaska Ct. App.1989) (error not obvious where "[t]his issue has not previously been litigated in Alaska. Other states that have considered similar issues have reached disparate conclusions.").

Having concluded that the error was not obvious, my inquiry into plain error would end. *See People v. Hagos,* 250 P.3d 596, 620 (Colo.App.2009) ("Because no error was plain or obvious at the time of defendant's trial, it follows that there is no plain error here."); *cf. People v. Vigil,* 251 P.3d 442, 447 (Colo. App.2010) ("[W]e need not decide whether the court actually erred if it is clear that the alleged error was not obvious.").