The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Aaron Bradley HOLT, Defendant–
Appellee.

No. 10SA6.

Supreme Court of Colorado,
En Banc.

June 21, 2010.

Daniel H. May, District Attorney, Fourth Judicial District, Donna Billek, Senior Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Kimberly C. Chalmers, Deputy State Public Defender, Colorado Springs, Colorado, Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal filed by the prosecution, we review the trial court's order to suppress defendant Aaron Holt's incriminating statements because they were obtained in violation of his *Miranda* rights.[1] We affirm.

In this case, six to nine armed police officers arrived at Holt's apartment to execute a search warrant. They knocked on the door loudly and announced their presence. Holt's fiancée opened the door, and the police entered quickly with their weapons drawn. The lead detective moved directly toward Holt, putting his hand on Holt's shoulder and telling him not to move. Another officer handcuffed Holt but told him that he was not under arrest at that time. Five minutes later, while Holt was still handcuffed, the lead detective asked Holt if he would be willing to answer some questions. Holt agreed. The detective then removed Holt's handcuffs and led him to an unmarked police van outside the apartment. He interrogated Holt inside the van for twenty-five minutes, during which time Holt made several incriminating statements. The detective then arrested Holt and advised him of his *Miranda* rights.

The prosecution concedes that Holt was interrogated when he was questioned inside the van. Applying our precedent and considering the totality of the circumstances, we agree with the trial court's determination that Holt was in custody during this interrogation. We rely on several key factors to make this determination. First, the officers used a degree of force typically associated with arrest when they entered Holt's apartment with their weapons drawn and handcuffed him. Second, Holt was handcuffed and subject to significant physical restraint when he consented to answering the detective's questions. Third, during the encounter no officer told Holt that he was free to leave. Fourth, Holt appeared to be the prime suspect in the investigation, which would have affected his perceived freedom to leave. Fifth, Holt had every reason to believe he would be arrested following interrogation, and his words and actions during interrogation indicate that he knew he was likely to be arrested. Finally, Holt was isolated and interrogated inside a police van—a non-neutral setting—for twenty-five minutes. A reasonable person in these circumstances would have felt deprived of his freedom of action in a manner similar to a formal arrest. Therefore, we conclude that Holt was in custody during interrogation. We affirm the trial court's suppression order and remand this case to that court for proceedings consistent with this opinion.

## I. Facts and Proceedings Below

In June 2009, six to nine officers from the Colorado Springs Police Department and the Federal Bureau of Investigation executed a warrant to search for child pornography on the computer in Holt's apartment. The officers knocked on Holt's door, loudly shouting, "Police! We have a search warrant! Open the door!" One officer carried a battering ram. Several wore body armor. Holt's fiancée opened the door, and the officers entered the apartment quickly with their weapons drawn. Holt was sitting on the couch in his boxer shorts. Detective Romine, the lead detective, moved directly toward Holt. He ordered Holt not to move and placed one hand on Holt's shoulder while the other officers performed a sweep of the apartment. The sweep took approximately one minute.

---

1. The prosecution filed this appeal pursuant to section 16–12–102, C.R.S. (2009), and C.A.R. 4.1.

After the sweep was over, Romine left the apartment while a second officer handcuffed Holt and stood near him as security. Holt's fiancée was not handcuffed.

Approximately five minutes later, Romine returned to the apartment. He overheard one of the officers tell Holt that he was not under arrest at that time.[2] Romine then approached Holt and asked him if he would be willing to answer some questions. Holt consented. Another officer removed Holt's handcuffs and Romine led Holt outside the apartment. Holt's fiancée remained inside the apartment. Romine testified that Holt was free to leave at this point, but Romine did not inform Holt of this fact, nor did he tell Holt that he could refuse to answer any questions.

Romine led Holt to a police van parked near the apartment building. Holt sat on the floor of the van with his legs outside the door. Romine placed the tape recorder next to Holt, kneeled outside the door, and began to question him. Romine initially asked Holt for basic information, such as Holt's name and birth date. Romine then introduced himself. He explained that he worked for the police department investigating internet crimes against children and that he had information regarding child pornography that led him to Holt's apartment. Romine reminded Holt that "Sergeant Dehart told you right up front you were not under arrest at that time." Romine then stated that the investigation was continuing and asked if Holt would be willing to help. Holt agreed.

Romine then asked Holt whether he had ever looked at child pornography. Holt admitted to viewing it as a kid and to having viewed it recently. Romine reminded Holt that the police had a search warrant for his computer and were going to search it. Holt said, "I know." Romine then asked whether they were going to find child pornography on the computer when they conducted the search. Holt replied that they would. Holt continued to answer each of Romine's questions, explaining how he downloaded the im-ages and where he stored them on the computer. During the course of questioning, Holt stated that the images disgusted him and that he knew they were illegal. He also said that he knew possessing even one image was too many. At one point, Holt said he felt "shook up" and his voice began to quaver.

Approximately eighteen minutes into the interrogation, Romine asked Holt what he thought a fair punishment would be for his behavior. Holt did not answer. Romine then told Holt that, because his behavior was illegal, he would have to "get [Holt] in trouble" and that Holt was going to be arrested for what he had done. Romine continued to interrogate Holt for several more minutes. He then stopped the recording, arrested Holt, and advised him of his rights.

The prosecution charged Holt with four counts of sexual exploitation of a child in violation of section 18–6–403, C.R.S. (2009). Before trial, Holt filed a motion to suppress the statements he made to Detective Romine, arguing that they were obtained in violation of his *Miranda* rights. The trial court held an evidentiary hearing on this motion. After taking testimony and listening to the recording of the interrogation, the trial court granted Holt's motion to suppress. The trial court held that, under the totality of the circumstances, a reasonable person in Holt's position would have felt deprived of his freedom of action to the degree associated with a formal arrest. It therefore held that Holt was in custody during interrogation and that his incriminating statements were obtained in violation of his *Miranda* rights.

## II. Standard of Review

We review the trial court's determination that Holt's incriminating statements were obtained in violation of his *Miranda* rights because he was in custody and subject to interrogation when he made those statements. The prosecution concedes that Holt was subject to interrogation. Thus, we focus

---

**2.** Detective Romine also testified that he overheard one of the officers, Sergeant Dehart, explain to Holt that he was in handcuffs for officer-safety reasons. However, Sergeant Dehart could not recall saying this to Holt, and the court did not make a finding of fact as to whether any of the officers told Holt that he was in handcuffs for officer-safety reasons.

on whether he was in custody for *Miranda* purposes during that time.

■ The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In order to protect this right, police must provide a suspect in custody with certain warnings before subjecting him or her to interrogation. *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements obtained without such warnings are subject to suppression. *People v. Lee,* 630 P.2d 583, 590 (Colo.1981).

■ To determine whether a suspect was in custody during an interrogation, we ask whether a reasonable person in the suspect's position would have felt "deprived of his freedom of action to the degree associated with a formal arrest." *People v. Taylor,* 41 P.3d 681, 691 (Colo.2002). This is an objective inquiry made on a case-by-case basis in light of the totality of the circumstances. *People v. Horn,* 790 P.2d 816, 818 (Colo.1990).

■ We consider a non-exclusive list of factors in determining whether a suspect was in custody during interrogation:

(1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by the officer to the defendant; (4) the officer's tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; (7) the officer's response to any questions asked by the defendant; (8) whether directions were given to the defendant during the interrogation; and (9) the defendant's verbal or nonverbal response to such directions.

*People v. Hankins,* 201 P.3d 1215, 1218–19 (2009). Another relevant consideration includes whether the officers told the defendant he was free to leave. *See id.* at 1219 (finding that defendant was not in custody, in part, because officers stated several times that he was free to leave). We also consider whether the officers used a degree of force traditionally associated with custody and arrest. *See People v. Breidenbach,* 875 P.2d 879, 886 (Colo.1994) (finding that the defendant was in custody, in part, because the officers used a degree of force typically associated with arrest when they stopped and interrogated him with their weapons drawn).

■ When a trial court rules on a motion to suppress incriminating statements due to a *Miranda* violation, it must make findings of fact and apply the law to those facts. *Hankins,* 201 P.3d at 1218. We defer to the trial court's findings of fact, but we review de novo whether those facts establish that the suspect was in custody during interrogation. *People v. Matheny,* 46 P.3d 453, 462 (Colo. 2002).

### III. Application

■ We now apply these factors to the present case. Considering the totality of the circumstances, we conclude that Holt was in custody during the interrogation.

Two facts suggest that Holt was not in custody during the interrogation. While Holt was inside the apartment and handcuffed, one officer told him that he was not under arrest at that time. And Detective Romine used a calm and nonthreatening tone throughout the interrogation.

However, other circumstances persuade us that Holt was in custody during the interrogation. First, six to nine officers entered Holt's apartment with their weapons drawn. One officer told Holt not to move, and another officer handcuffed him. This represents "a degree of force more typically associated with custody and arrest than with a brief detention." *Breidenbach,* 875 P.2d at 886 (noting that, where a "police officer uses physical restraint on the suspect or draws a gun, [the encounter] is more likely to be deemed custodial"); *see also People v. Pascual,* 111 P.3d 471, 480 (Colo.2005) (explaining that, in determining "custody for *Miranda* purposes, this court has considered significant evidence that the officers drew their guns, used handcuffs, or otherwise demonstrated the kind of force typically associated with an arrest" (internal quotation marks omitted)); *People v. Reddersen,* 992

P.2d 1176, 1181 (Colo.2000) (noting that courts have held that a suspect was in custody "as a result of the force used by the police ... [where] the police either drew their weapons or handcuffed the suspect at some point during the stop"); 3 Wayne R. LaFave, et al., *Criminal Procedure* § 6.6(f), at 749–50 (3d ed. 2007) ("A Court ... is likely to find custody if there was physical restraint such as handcuffing, drawing a gun, holding by the arm or placing into a police car.").[3]

Holt was in handcuffs and subject to significant physical restraint for five minutes after the officers entered his apartment. He was still in handcuffs when he agreed to be questioned. *See United States v. Maguire*, 359 F.3d 71, 79 (1st Cir.2004) (observing that handcuffs are considered "one of the most recognizable indicia of traditional arrest"). Romine testified that he would have removed the handcuffs even if Holt had not agreed to cooperate. But Romine did not tell Holt that he intended to remove the handcuffs, nor did he tell Holt that he could decline to answer any questions. Hence, we cannot assume that Holt understood that the handcuffs would be removed even if he remained silent. *See United States v. Newton*, 369 F.3d 659, 677 (2d Cir.2004) (holding that defendant was in custody while handcuffed during a search of his apartment and explaining that a court could not assume that defendant understood the handcuffs would be removed after police finished the search).

During the encounter, no officer told Holt that he was free to leave. *Cf. Hankins*, 201 P.3d at 1219 (finding that defendant was not in custody, in part, because officers stated several times that he was free to leave); *People v. Thomas*, 839 P.2d 1174, 1178 (Colo. 1992) (finding that encounter was consensual, and therefore noncustodial, after officer told defendant he was free to go).

Holt appeared to be the prime suspect in a serious felony investigation. Although this factor is not dispositive, it remains an important consideration in our custody determination. *See Stansbury v. California*, 511 U.S.

318, 326, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (explaining that a defendant's belief that he or she is the prime suspect in an investigation is relevant if it would have "affected how a reasonable person in that position would [have] perceive[d] his or her freedom to leave"). Detective Romine testified that he did not have a "specific suspect" before knocking on the apartment door, but the officers behaved as though Holt were the prime suspect from the moment they entered. Detective Romine, the lead investigator, moved directly toward Holt after entering the apartment. He put his hand on Holt's shoulder and told him not to move. Another officer then handcuffed Holt and left him in handcuffs for five minutes while Romine was outside the apartment. After Romine returned, he asked Holt if he would be willing to answer some questions and then led Holt out of the apartment. By contrast, the officers did not handcuff Holt's fiancée or ask her to leave the apartment for questioning. The officers treated Holt very differently from his fiancée. A reasonable person in these circumstances would have considered himself to be the prime suspect in the investigation and, as a result, would have felt less free to leave.

Similarly, Holt knew the officers were in his apartment during the interrogation executing a warrant to search and seize his computer for child pornography. He also knew the officers were likely to discover incriminating evidence that would lead to his arrest for a serious felony. Therefore, Holt had " 'every reason to believe he would not be briefly detained and then released' " following interrogation. *Taylor*, 41 P.3d at 692–93 (quoting *People v. Polander*, 41 P.3d 698, 705 (Colo.2001)).

Holt's responses and conduct during the interrogation also show that he knew he was likely to be arrested. Early in the interrogation, Holt admitted to possessing and sharing child pornography. He called it illegal and disgusting. When Romine later asked Holt

---

**3.** In determining that the officers used a degree of force traditionally associated with custody and arrest, we do not conclude or imply that the officers acted unreasonably. Entering the apartment with weapons drawn and handcuffing Holt may have been reasonable or even necessary for officer-safety purposes, but that does not alter our custody inquiry, which focuses on how the officers' actions would have reasonably affected the suspect's perception of his own freedom.

how he felt, he answered that he was "shook up" and his voice began to quaver. Holt's reactions suggest that he knew he would not be briefly detained and then released after interrogation.

Finally, Holt was isolated from his fiancée during the interrogation. *See People v. Minjarez*, 81 P.3d 348, 353 (Colo.2003) ("The *Miranda* court was particularly concerned about ... coercive interrogation techniques applied to individuals who are isolated and deprived of contact with friends and family."); LaFave, et al., *supra*, at 751 (custody is less likely to be found "when the questioning occurred in the presence of a suspect's friends or other third parties, and more likely to be found when the police have removed the suspect from such individuals"). And he was interrogated inside a police vehicle instead of in a neutral location. *See People v. Howard*, 92 P.3d 445, 452 (Colo.2004) (noting that questioning that takes place at a neutral location, such as the defendant's home, is less inherently coercive than questioning in a police-dominated setting); William E. Ringel, *Searches & Seizures Arrests and Confessions*, § 27:5 (West 2d Ed. 2003) ("Interrogation which occurs in a location associated with law enforcement personnel is more likely to be reasonably perceived as custodial by the suspect.... Therefore, many courts have viewed interrogation in a police station, jail, or police vehicle as a significant indication of custody."); LaFave, et al., *supra*, at 738–39 ("[C]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings.")

Considering the totality of these circumstances, we conclude that a reasonable person in Holt's circumstances would have felt deprived of his freedom of action in a manner similar to a formal arrest. Therefore, we conclude that Holt was in custody and subject to interrogation without being advised of his *Miranda* rights.

## IV. Conclusion

For the reasons stated above, we affirm the trial court's order to suppress Holt's incriminating statements, and we remand this case to that court for proceedings consistent with this opinion.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

Precisely what constitutes "custody," entitling someone being questioned by the police to *Miranda* warnings, is a matter of federal law. Because I think the majority continues to misunderstand, or at least misapply, the governing federal law and does so again today in suppressing the defendant's admission to possessing child pornography, I respectfully dissent.

I have elsewhere detailed this jurisdiction's long history of confounding the seizure of a person, for purposes of the Fourth Amendment's prohibition against unreasonable seizures, with custody, for purposes of the Fifth Amendment's privilege against self-incrimination. *See, e.g., People v. Elmarr*, 181 P.3d 1157 (Colo.2008) (Coats, J., dissenting). Although this court has, over the years, largely come to use the appropriate federal terminology, it continues to mechanically apply factors developed to determine whether a reasonable person would feel free to leave—a standard establishing a lesser degree of seizure than would amount to custody for purposes of "custodial interrogation." Because, however, the ultimate determination of custody, even under the proper federal standard, involves a fact-intensive assessment in each individual case, I see little point in more specifically critiquing the majority's balancing and conclusion again in this case, except to note that I believe it fundamentally errs by treating questioning by a single officer, standing outside a van, in a public parking lot, with the defendant sitting on the floor of the open van with his legs dangling outside, as "isolat(ing)" him for interrogation "inside a police vehicle."

Instead, I think it important to expose a more subtle flaw in the majority's analysis, and one far more telling of the majority's apprehensions about accepting confessions as a legitimate tool in law enforcement. While it does not actually use the term, by heavily resting its custody analysis on the defen-

dant's awareness that he had become the primary suspect and his belief that the police would ultimately find evidence incriminating him, the majority, in effect, reverts to the thoroughly discredited focus-of-the-investigation interpretation of *Miranda*. Regularly in the now almost half century since it created the prophylactic *Miranda* warnings, the Supreme Court has been forced to re-emphasize that these added protections against coerced confessions were never intended to bar the use of confessions altogether or even to require special warnings before interrogating anyone who has become a suspect, but merely to provide additional protection from the inherently coercive atmosphere of the stationhouse interrogation, or its equivalent. *See, e.g., Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

In *People v. Polander*, 41 P.3d 698 (Colo. 2001), on which the majority relies, we found that a suspect, who had already been seized and in whose (at least joint) possession contraband had already been discovered, had every reason to understand that she would not be released after brief interrogation and that she was already effectively under arrest. In that situation, the suspect was not only aware that she had been seized and was no longer free to leave but also that the police had already discovered evidence virtually precluding the possibility of her release from custody short of formal arrest. By contrast, the majority requires *Miranda* warnings not only when a suspect would reasonably understand that he has effectively been placed under arrest but even when a seized suspect merely has reason to believe the police will acquire probable cause justifying his arrest at some point in the future. I consider it apparent that the majority prefers the focus-of-the-interrogation approach to *Miranda* and partially reintroduces that standard through the back door by treating a suspect's awareness that he has become the focus of the investigation as a key factor in the determination whether he is already in custody. Whether a suspect is motivated by a desire to deceive the police, or by hopes of lenient treatment, or even by a belief that he has, for all intents and purposes, been found out and

there is no longer any point in continuing his deception, he is not entitled to the protections of *Miranda* unless he is being interrogated in the inherently coercive atmosphere that accompanies an arrest, increasing the danger that any unadvised statement would be the product of coercion.

Because I believe the meaning of "custody" is a matter for the United States Supreme Court, and the approach of the majority reflects a choice the Supreme Court has expressly and firmly rejected, I respectfully dissent.

I am authorized to state that Justice EID joins in this dissent.