The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Martha RIZO, Defendant–Appellant.

No. 09CA1140.

Colorado Court of Appeals,
Div. VII.

April 14, 2011.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Harvey Law Firm, Cynthia A. Harvey, Castle Rock, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Martha Rizo, was convicted by a jury of class two felony sexual assault. The evidence established that she assisted her boyfriend in perpetrating the crime.

Defendant appeals the judgment of conviction, raising two arguments. First, she argues that the jury that convicted her was "anonymous," and, therefore, her rights to a public trial, a fair and impartial jury, due process, and equal protection were violated. Second, she contends that statements she made to the police on the morning after the assault should have been suppressed because she was not advised of her *Miranda* rights. We are not persuaded by either contention. Therefore, we affirm.

## I. "Anonymous" Jury

### A. Factual Background

The prospective jurors here filled out questionnaires before they were called into the courtroom. These questionnaires, which were distributed to the court, the prosecution, and the defense, contained the jurors' first and last names, addresses, ages, telephone numbers, and occupations.

Outside the jury panel's presence, the trial court informed the attorneys that they were not to refer to the jurors by name in the courtroom. Rather, the court instructed them to refer to the jurors by their juror numbers. Neither side objected.

The trial court called all the prospective jurors into the courtroom. The court made several introductory remarks describing the process of a trial, including these:

> Before you came into the courtroom ... each of you filled out a questionnaire. We have reviewed those questionnaires and we will ask questions of some of you individually back in my office....

> Some of you may be able to see that there is a number that is affiliated with each of the seats [in the jury box]. Once you come up to the jury box, we will refer to you by your seat number as opposed to your name and I'll explain that in more detail when we start general voir dire.

The court told the prospective jurors that the court and counsel wished to speak with several jurors. The court then called the first name, last name, and juror number of about fifteen of them. The court and counsel questioned them individually in chambers about issues raised by information in their questionnaires. One of these people eventually sat as a juror.

After these private interviews, the parties and the court began to select the jury. Outside the jury panel's presence, but in open court and orally on the record, the court listed the first name, the last name, and the juror number of twenty-five of them.

Once the jurors entered the courtroom, these twenty-five prospective jurors took seats in the jury box. The trial court then told them:

> I will be referring to you by your seat number as opposed to your last name. As you can now see, my reporter types very quickly, and she is writing everything down that is said in court. It makes a much cleaner record if we refer to you by your seat number rather than your surname. It's not done out of disrespect or being discourteous to you[;] it is to make sure that the record is more clearly taken.

The court, addressing the jury panel a short time later to describe the procedure to be taken during breaks, added:

> We have a seating chart that has your name affiliated with each of the chair numbers and we need to keep all of you in the same position in the seating chart that you now occupy.

Thereafter, in open court, but outside the jury panel's presence, the court listed replacements—by first name, last name, and juror number—for those who had been removed for cause or by use of a peremptory challenge.

### B. Legal Principles

■ Because defendant did not raise this issue below, we review it to determine whether the court committed plain error. *People v. Miller,* 113 P.3d 743, 749 (Colo.2005). Plain error is error that is obvious and substantial and "so undermine[s] the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at 750 (quoting *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo. 2003)).

■ "Generally, an 'anonymous jury' describes a situation where juror identification information is withheld from the public and the parties themselves." *State v. Sandoval,* 280 Neb. 309, 325–26, 788 N.W.2d 172, 195 (2010). The concept of an anonymous jury arose in the federal courts and was first used to protect jurors from dangerous defendants. *See People v. Williams,* 241 Mich.App. 519, 522–23, 616 N.W.2d 710, 713 (2000). Use of anonymous juries has expanded and courts now consider several factors when determining if an anonymous jury is appropriate, such as

> (1) the defendant's involvement in organized crime; (2) the defendant's participation in a group with the capacity to harm jurors; (3) the defendant's past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*Sandoval,* 788 N.W.2d at 196 (collecting federal cases).

■ Although "these are concerns commonly present in cases . . . where courts have upheld the use of an anonymous jury . . . [o]ther circumstances may also justify its use." *United States v. Branch,* 91 F.3d 699, 724 (5th Cir.1996). Therefore, "courts should look to the 'totality of the circumstances'" when determining the propriety of an anonymous jury. *Id.* (quoting *United States v. Ross,* 33 F.3d 1507, 1521 n. 26 (11th Cir.1994)).

Even when justified, the impaneling of an anonymous jury can impair the rights of a defendant in two ways. First, such a jury "may interfere with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges, thereby implicating defendants' Sixth Amendment right to an impartial jury." *United States v. Shryock,* 342 F.3d 948, 971 (9th Cir.2003). Second, "[a]n anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." *United States v. Mansoori,* 304 F.3d 635, 650 (7th Cir.2002)(quoting *Ross,* 33 F.3d at 1519).

In certain cases, the parties have access to identifying information, but the jurors are always referred to by number rather than by name. These are called "numbers" juries. *See Sandoval*, 280 Neb. at 326, 788 N.W.2d at 195.

### C. Analysis

Defendant contends on appeal that the jury in her case was "anonymous." She argues that the use of an anonymous jury (1) denied her right, under the Sixth Amendment and Colo. Const. art. II, § 16, to a public trial before an impartial jury; (2) denied her right to due process because jury anonymity was not necessary to protect jurors from harm or improper influence; (3) denied her right to due process because the use of an anonymous jury would adversely affect the presumption of innocence by tainting the jurors' view of her; and (4) violated her right to equal protection of the law because other defendants in the same and other jurisdictions were not tried by anonymous juries.

We need not address these issues because we conclude that defendant's fundamental premise is flawed: she was not tried by an anonymous, or even a "numbers," jury. Therefore, we hold that there was no error at all, let alone plain error.

We reach this conclusion because:

- The trial court, the prosecution, and the defense knew the prospective jurors' first and last names and their addresses, telephone numbers, ages, and occupations because this information was included in the questionnaires.
- The prospective jurors were aware that the court and the parties had this information because the court told them that (1) their questionnaires had been reviewed; and (2) the court and the parties had a seating chart in which the jurors' names had been placed next to their seat numbers.
- The public knew the prospective jurors' names because those names were announced in open court.
- The jurors had no reason to believe that their names would not be used in court

because the trial court listed fifteen names, in the jury panel's presence, of prospective jurors who would be asked to speak with the court and counsel in chambers. One of those prospective jurors served on the jury.

- The court's explanation for referring to prospective jurors by number did not implicate the presumption of innocence because it did not suggest that defendant was a dangerous person. Rather, the court stated that this procedure would assist the court reporter by "mak[ing] sure that the record is more clearly taken."

In reaching this conclusion, we recognize that another division of this court recently held that a jury was a "numbers" jury when prospective jurors were simply referred to by number. *People v. Robles*, 302 P.3d 269, 276–77 (Colo.App.2011). In that case, as here, the jury was not anonymous because the defendant had access to the prospective jurors' identifying information. *Id.* at 274–75. However, this case is readily distinguishable from *Robles* in three important respects.

First, there was no explanation offered to the prospective jurors in *Robles* for why numbers would be used rather than names. That happened here. Further, the explanation given here did not adversely affect the presumption of innocence.

Second, there was no indication in *Robles* that the trial court made the prospective jurors' identities public by announcing their names in open court. That happened here.

Third, there was no suggestion in *Robles* that the prospective jurors knew their names could be used in open court. That happened here.

## II. Statements

### A. Factual Background

On the morning after the assault, police officers interviewed defendant in her apartment. Initially, defendant admitted that the victim and her boyfriend had been present in her apartment the night before, but she denied there had been any sexual activity. When informed by police that her boyfriend

had been arrested and that the victim had been taken to the hospital, defendant stated that the boyfriend and the victim had engaged in consensual sex. Defendant answered other questions from the officer, and produced the victim's sweatshirt from a bedroom.

Prior to trial, defendant filed a motion to suppress. She argued that she was in custody when the officers questioned her, and that they were therefore obligated to advise her of her *Miranda* rights before asking her any questions. *See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After holding a hearing, the trial court denied defendant's motion to suppress, and the prosecution introduced these statements at trial.

### B. Legal Principles

■ "When a trial court rules on a motion to suppress incriminating statements due to a *Miranda* violation, it must make findings of fact and apply the law to those facts." *People v. Holt*, 233 P.3d 1194, 1197 (Colo.2010). "We defer to the trial court's findings of fact if supported by the record." *People v. Hankins*, 201 P.3d 1215, 1218 (Colo.2009). "We review de novo the legal question of whether those facts establish that the suspect was in custody when interrogated." *Id.*

■ In order to protect a suspect's constitutional right not to be a witness against himself or herself, "police must provide a suspect in custody with certain warnings before subjecting him or her to interrogation." *Holt*, 233 P.3d at 1197. A defendant is in custody if "a reasonable person in the defendant's position would consider himself to be deprived of his freedom of action to the degree associated with a formal arrest." *People v. Matheny*, 46 P.3d 453, 468 (Colo. 2002). "To determine whether the defendant had such a reasonable belief, a court must consider the totality of the circumstances." *Hankins*, 201 P.3d at 1218. Some of the factors the court should evaluate are

(1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by the officer to the defendant; (4) the offi-

cer's tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; (7) the officer's response to any questions asked by the defendant; (8) whether directions were given to the defendant during the interrogation; and (9) the defendant's verbal or nonverbal response to such directions.

*Matheny*, 46 P.3d at 465–66 (quoting *People v. Trujillo*, 938 P.2d 117, 124 (Colo.1997)). None of these factors is determinative, and the court may consider additional factors. *Hankins*, 201 P.3d at 1219. For example, courts may consider the level of force used by the police and whether the police told the suspect he or she was free to leave. *Holt*, 233 P.3d at 1197.

### C. Analysis

■ The record of the suppression hearing establishes that two armed and uniformed police officers went to defendant's apartment at about 7 a.m. When defendant answered the door, one officer asked for permission to enter, which defendant granted. Once inside, the officers stood on either side of the door.

The first officer asked defendant questions in a conversational tone of voice. When defendant informed the officers that the victim's sweatshirt was in a back bedroom, they asked defendant to retrieve it. One of the officers accompanied her to the bedroom.

When defendant returned to the living room, she sat on a couch. The officers asked her additional questions for about ten minutes. She answered them. The officers did not touch defendant during this conversation; they did not raise their voices to her; and defendant did not indicate that she did not wish to answer their questions. They did not inform defendant of her *Miranda* rights.

The officers then placed defendant under arrest and handcuffed her.

Deferring to the trial court's findings of fact, we conclude, in conducting our de novo review, that these facts support the trial court's determination that defendant was not

in custody when she was questioned. This is so because we conclude, under the totality of the circumstances present in this case, that a reasonable person in defendant's position would not have considered herself deprived of her freedom of action to the extent associated with a formal arrest. *See Hankins,* 201 P.3d at 1218; *Matheny,* 46 P.3d at 468.

The facts here are similar to those in *People v. Cowart,* 244 P.3d 1199, 1205 (Colo. 2010). There, our supreme court concluded that a defendant was not in custody when questioned by the police. In *Cowart,* as in this case:

- The interview took place at the defendant's home and was conducted by a limited number of officers.
- The officers did not enter the home until they received the defendant's permission.
- They stood by the home's entrance while they spoke with the defendant.
- The defendant was not subjected to force or physical restraint, the interview was conducted in a conversational tone, and the defendant was allowed to move freely in the home.
- The defendant did not try to stop the interview, did not try to leave, and did not ask the police to go away.

*See id.* at 1202.

The judgment is affirmed.

Judge TERRY and Judge BOORAS concur.